IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ORLANDO FLORES-FLORES

   Plaintiff,

            v.

HORIZON LINES OF PUERTO RICO, INC.

   Defendant.

**Civil No. 12-1191 (SEC)**

**OPINION AND ORDER**

Before the Court are plaintiff's motion to remand to state court (Docket # 7), and defendant's opposition thereto (Docket # 11). After reviewing the filings and the applicable law, plaintiff's motion is **GRANTED**.

**Factual and Procedural Background**

This is an action to recover damages stemming from defendant Horizon Lines of Puerto Rico Inc.'s ("Horizon") alleged refusal to provide plaintiff Orlando Flores-Flores with meal periods. The pertinent facts are easily summarized. Flores worked for Horizon as a crane maintenance electrician for twenty-two years. He ceased working there on October 2, 2011. During his years of service, the complaint states, Horizon never granted Flores a meal period. Docket # 1-4, ¶ 8. Flores specifically alleges that, during his regular and extraordinary work schedules, Horizon never allowed him to interrupt the rendering of his services in order to take his meal period. Id., ¶ 9.

Although not entirely clear when, Flores processed a claim for a meal period through his labor union, Seafarers International Union of North America (the "Union"), given that his "position [was] an unionized position." Id., ¶ 6. The relationship between Horizon and the Union had been governed by a collective bargaining agreement (the "CBA"). Id., ¶ 7. But, according to the complaint, the regulation of the meal period "ha[d] not taken place through the

**CIVIL NO. 12-1191 (SEC)**                                                                 Page 2

[CBA]." Id. Curiously, on November 2, 2011(a month after Flores' departure), the Union and Horizon subscribed a Memorandum of Understanding regarding "a longstanding verbal agreement that the meal period for crane maintenance electricians should be one half hour." Docket # 1-7, Exh. 4-D. The Memorandum, which allegedly sought to "formally materialize" the verbal agreement between the Union and Horizon, was fully incorporated into the CBA on even date. See id.

Then, on December 23, 2011, the Union informed Flores that it had closed his claim and would no longer represent him regarding such matter. Docket 1-7, Exh. 4-B. Undeterred, on February 15, 2012, Flores filed this action in state court, seeking damages for Horizon's alleged refusal to provide him with meal periods. Flores couched his claim on Law 379, as amended, P.R. Laws Ann. tit. 29, § 283, which establishes the right of an employee to take time for meals during the regular working day as well as during overtime.[1]

In removing the case to this court (Docket # 1), Horizon maintained that § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, "completely preempted" Flores' state law claim, thereby converting it into a federal claim and permitting removal under federal question doctrine, 28 U.S.C. §§ 1331, 1441(b). Horizon also moved to dismiss the complaint (Docket # 2), while Flores moved to remand to state court, contending that removal had been improper (Docket # 7).

Flores' argument is straightforward: because at the time he worked for Horizon the meal period regulation formed no part of the CBA, the resolution of his state-law claim neither bears relation to the CBA nor requires its interpretation to determine whether there had been a

---

[1] Specifically, the law requires the provision of a "meal period" to employees "not before the conclusion of the third, nor after the commencement of the sixth consecutive hour of work." Id. It also requires that employers who permit work during the meal period "shall be bound to pay for such period or fraction thereof at a wage rate equal to double the rate agreed upon for regular work hours." Id.

violation of his right to a meal period. Consequently, Flores reasons, § 301 does not control. Docket # 7, p. 4. Horizon disagrees, arguing that the subject of the meal period "was and is part of the collective bargaining process" and thus is "substantially dependent" on the CBA. Docket # 11, p. 4.

**Standard of Review**

It goes without saying that a suit filed in state court, founded on a claim arising under federal law, may be removed to the federal district court, irrespective of the parties' residence. 28 U.S.C. § 1441(b). A cause of action arises under federal law only "[w]hen the plaintiff's statement of his own cause of action shows that it is based upon [federal law] or [the] Constitution." Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908). Under this well-pleaded complaint rule, the fact that a defense to the plaintiff's cause of action may involve federal law is insufficient grounds for removal. Id. It is also common ground that "the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Therefore, the burden of proof on jurisdiction lies with the party seeking removal. Pruell v. Caritas Christi, 645 F.3d 81, 84 (1st Cir. 2011) (citing BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824, 831 (1st Cir. 1997), cert. denied, 132 S. Ct. 1969 (2012)).

However, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 22 (1983) (citations omitted). The "necessary ground" for the creation of the artful pleading doctrine "was that the preemptive force of [a federal statute was] so powerful as to displace entirely any state cause of action." Id. at 23. It follows that, if a court finds that "a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475

**CIVIL NO. 12-1191 (SEC)** Page 4

(1998). Finally, the First Circuit has showed skepticism about "[t]he applicability of the artful pleading doctrine outside of complete federal preemption of a state cause of action." Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 12 (1st Cir. 2004) (citation omitted).

**Applicable Law and Analysis**

*Section 301 Preemption*

Here, the claim contained in the state court complaint seemingly arises under Puerto Rico law, which under the well-pleaded complaint rule would normally preclude removal, e.g., Franchise Tax Bd., 463 U.S. 1 at 9-11, were it not for the so-called "complete preemption" exception. The complete preemption doctrine applies when a federal cause of action supplants the state law cause of action, "[a]nd thus converts the state claim into a federal claim." SPGGC, LLC v. Ayotte, 488 F.3d 525, 536 n. 4 (1st Cir. 2007), cert. denied, 552 U.S. 1185 (2008)). In such a scenario, the putative state claim is so entwined with federal law as to allow the removal. Cavallaro v. UMass Mem. Healthcare, Inc., 678 F.3d 1, 6 (1st Cir. 2012).

The Supreme Court has refined this doctrine principally in labor cases, such as the instant one. Id. at 7 (collecting cases). In fact, "[t]he most familiar example is a claim brought under state contract law to enforce a CBA subject to federal jurisdiction under section 301 of the LMRA." Id. (citing Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 102-04,(1962); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-13 (1985)). The complete preemption doctrine, the First Circuit recently has explained, emanated from the Supreme Court's holding that

> (1) section 301 required the federal courts to create a body of federal common law for CBAs affecting interstate commerce; (2) this body displaced state contract law; and (3) by this alchemy the purported state claim became a federal contract claim allowing removal as one within the federal 'arising under' jurisdiction under section 1441(b).

Id. (citation and internal quotation marks omitted).

The Court has expressly extended complete preemption to state law claims "'founded directly on rights created by collective-bargaining agreements'" or "'substantially dependent on analysis of a collective-bargaining agreement.'" Id. (quoting Caterpillar Inc., 482 U.S. 386 at 394). On one hand, a claim so fits if it adduces conduct that arguably comprises a breach of a duty that arises pursuant to a collective bargaining agreement. Flibotte v. Pennsylvania Truck Lines, 131 F.3d 21, 26 (1st Cir. 1997) (citing United Steelworkers v. Rawson, 495 U.S. 362, 369 (1990), cert denied, 523 U.S. 1123 (1998)). On the other hand, "[a] claim so qualifies if its resolution arguably hinges upon an interpretation of the collective bargaining agreement." Id. (citing Lueck, 471 U.S. at 220). In short, "this test boils down to whether the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement." Id. If one of those circumstances is satisfied, "[t]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action . . . ." Caterpillar Inc., 482 U.S. 386 at 394 (citation and internal quotations marks omitted).

The analysis begins with the threshold issue: whether there is a clear indication that Flores is covered by the CBA, "[f]or it is that fact that establishes subject matter jurisdiction in the federal district court." Pruell, 645 F.3d at 83." Flores' complaint explicitly states that his position is an unionized one and, as such, covered by the CBA. Thus, subject matter jurisdiction is potentially satisfied. Having established that preliminary matter, the inquiry turns on whether complete preemption engulfs Flores' state law claim. That is, whether Flores' state law claim is "founded directly on rights created by collective-bargaining agreements' or "substantially dependent on analysis of a collective-bargaining agreement." Caterpillar Inc., 482 U.S. at 394. Flores argues that it is not.

As said, the crux of Flores' argument is that, at the time he ceased working for Horizon, the meal periods were unregulated by the CBA. Because the Memorandum, which Horizon relies on to contend that the meal period forms part of the CBA, was signed on November 2, 2011, Flores submits that it was not in effect during the time he worked for Horizon. Consequently, Flores maintains, the resolution of his claim is not dependent on the meaning of the CBA, and complete preemption is inapplicable.

For its part, Horizon argues that the evidence of record shows that the meal periods "[h]a[ve] not only been discussed as part of the collective bargaining process but bargained through agreement." Docket # 11, p. 3. Specifically, Horizon points to the Memorandum's language regarding the "longstanding verbal agreement" in connection with the meal periods for crane maintenance electricians, as "[e]vidence of a binding term and condition of employment protected by law." Id. Horizon ultimately concludes that Flores' state-law claim is substantially dependent on the CBA. Though it carries some weight, this argument ultimately fails.

If Flores' meal period claim is to elude preemption, he must first show that his claim does not spring from duties prescribed by the CBA. Flores easily meets this requirement; the duties allegedly breached by Horizon derive from Law 379, a source extraneous to the CBA. The CBA in effect at the time Flores worked for Horizon bespeaks nothing as to the meal periods. Still, to escape preemption Flores must also demonstrate that the resolution of his claim does not depend on the interpretation of the CBA.

To advance its argument that the subject of the meal period substantially depends on the CBA, Horizon relies heavily on Posadas De Puerto Rico Assocs. v. NLRB, 243 F.3d 87, 92 (1st Cir. 2001). The First Circuit held there—in the context of the proprietary of an order entered by the National Labor Relations Board—that an employer's longstanding practice of providing

**CIVIL NO. 12-1191 (SEC)**                                                                                                          Page 7

its unionized employees with insurance benefits transformed such practice "[i]nto a term or condition of employment." Id. The court affirmed the NLRB decision, which was entitled to deference, ruling that the employer could not discontinue such practice without "bargaining to impasse." Id.  And as relevant here, the First Circuit rejected the employer's argument that its unfair labor practice was "[n]ot a term and condition of employment because it was not embodied in the collective bargaining agreement with the [u]nion." Id. In so doing, the court held:

> An item that is not addressed in a collective bargaining agreement can become a term and condition of employment, and hence a mandatory subject of bargaining, if it has been "satisfactorily established" by past practice or custom. Here, we have a practice that was carried out for almost twenty years, resulting in substantial reliance by Posadas's unit employees. As the Board noted, it is that longstanding history—coupled with the nature of the benefit at issue—that transformed this practice into a term or condition of employment.

Id. (internal citation omitted); but see Local 827, IBEW v. Verizon New Jersey, Inc., 458 F.3d 305, 312 (3d Cir. 2006) ("Given the clarity of the language in this CBA, we find that the bargaining history cited by Local 827 is inapposite  If a contract is explicit and unambiguous . . . there is no need to look to extrinsic evidence.") (citations and internal quotation marks omitted). Although Flores failed to reply to Horizon's opposition to remand, thereby ignoring the foregoing jurisprudence, Horizons' single-minded reliance on Posadas De Puerto Rico is nonetheless misplaced.

Posadas De Puerto Rico is factually different. For starters, there is no NLRB order present here. Moreover, in Posadas De Puerto Rico, the employer's longstanding practice of providing its employees with insurance benefits did not originate from duties imposed by Puerto Rico law. Here, by contrast, the right of an employee to a meal period is explicitly mandated by Law 379. True, Law 379 does not confer nonnegotiable rights, as it provides that "[w]hen the employees are unionized, the stipulation for reducing the period fixed for taking food may be

**CIVIL NO. 12-1191 (SEC)**                                                      Page 8

effected through [the] collective bargaining [agreement] or written agreement between the union and the employer." P.R. Laws Ann. tit. 29, § 283 (emphasis added); see Flibotte v. Penn. Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997) (stating that § 301 "'cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law'" (quoting Livadas v. Bradshaw, 512 U.S. 107 (1994), cert. denied, 523 U.S. 1123 (1998))).[2] But at the time Flores ceased working for Horizon the supposed "longstanding verbal agreement that the meal period for crane maintenance electrician[s] should be one half hour," did not form part of the CBA—such "incorporation" occurred on November 2, 2011, a month after Flores' October departure. Docket # 1-7, Exh. 4-D. Thus, at the time Flores worked for Horizon, the regulation of the meal periods was neither reduced to "writing" nor incorporated into the CBA, and that is plainly insufficient to "effect" the statutory rights conferred by Law 379. P.R. Laws Ann. tit. 29, § 283; cf. Valles v. Ivy Hill Corp., 410 F.3d 1071, 1082 (9th Cir. 2005) (holding that § 301 does not preempt California's meal period law because such right "is plainly nonnegotiable"). "[T]he Supreme Court has repeatedly admonished that § 301 preemption is not designed to trump substantive and mandatory state law regulation of the employee-employer relationship; § 301 has not become a 'mighty oak' that might supply cover to employers from all substantive aspects of state law." Humble v. Boeing Co., 305 F.3d 1004, 1007 (9th Cir. 2002) (footnotes omitted).

It is true that collective bargaining contracts "[c]an be and often are modified by a subsequent nonwritten agreement—whether express (and therefore oral) or tacit (and therefore evidenced by subsequent dealings)—between the union and the employer." Orth v. Wis. State Emples. Union, Council 24, 546 F.3d 868, 873 (7th Cir. 2008) (Posner, J.) (citations omitted);

---

[2] While Law 379 provides that the meal period is normally one hour, "[i]f a lesser period is fixed for the mutual convenience of the employee and his/her employer, or through the written stipulation of both, the aforesaid shall not be less than thirty (30) minutes . . . ." Id. (emphasis added).

accord Merk v. Jewel Food Stores Div. of Jewel Cos., 945 F.2d 889, 901 (7th Cir. 1991) (Easterbrook, J., dissenting). But Law 379 explicitly proscribes such modification or changes. By requiring changes to be either in writing or form part of the CBA, Law 379 forecloses the more permissive practice sanctioned by Posadas De Puerto Rico and Orth.

That Law 379 provides such a robust protection for employees is unsurprising. After all, that law "[i]s inspired in the protection of the workmen's health, granting them time to take their food and to rest." Almodovar v. Cerveceria India, Inc., 3 P.R. Offic. Trans. 567, 103 P.R. Dec. 407, 409 (1975). This conclusion, moreover, comports with the Supreme Court of Puerto Rico's admonition that "[t]he exclusion from the benefits of the labor law must be clear and it requires a strict construction," Lopez Vega v. Vega Otero, Inc., 3 P.R. Offic. Trans. 243. 103 P.R. Dec. 175, 177 (1974) (citation omitted), and is in line with that court's mandate to liberally interpret labor laws; "[t]heir liberal interpretation, in favor of those whom they intend to protect, is imperative." Hernandez v. Raytheon Serv. Co. P.R., No. 05-1937, 2006 WL 1737167, at *2 (D.P.R. Apr. 27, 2006) (construing Puerto Rico law); Roman-Samot v. Pontifical Catholic University of Puerto Rico, No. 10-1879, 2011 WL 5025978, at *7 (D.P.R. Oct. 21, 2011).

Under these circumstances, the Court cannot countenance Horizon's broad reading of § 301. Nor its theory that the subject of the meal period was implied into the CBA. Horizon's liberal construction, simply put, runs afoul of Puerto Rico law. Applying Lopez Vega's strict construction, it follows that Flores' meal period claim is not "[i]nextricably intertwined with consideration of the terms of the labor contract." Lueck, 471 U.S. at 213l.

Assuming arguendo that Horizon's implicit incorporation theory is compatible with Puerto Rico law, and that Posadas De Puerto Rico controls here, Horizon has nonetheless presented no affidavits or documentary evidence (besides the Memorandum) showing that its longstanding practice of reducing the meal periods from one hour to a half hour was enunciated,

**CIVIL NO. 12-1191 (SEC)** Page 10

consistent, and endured over a reasonable length of time. See Public Serv. Elec.& Gas Co. v. Local 94 IBEW, 140 F. Supp. 2d 384, 398 (D.N.J. 2001) (construing Posadas De Puerto Rico). Unlike Posadas De Puerto Rico Assocs, where the longstanding practice endured for over twenty years, Horizon has marshaled no evidence as to the duration of the supposed verbal agreement reducing the meal period. Horizon has thus failed its burden at this stage. E.g., Pruell, 645 F.3d at 84 (reiterating that burden of proof on jurisdiction lies with the party seeking removal).

Horizon has one last arrow in its quiver. It posits that, because Flores elected to file his initial claim for his meal period through the Union's grievance procedure, he tacitly endorsed the CBA. Consequently, Horizon alleges, Flores indirectly approved of the alleged longstanding practice referred to in the Memorandum. This similar argument, which takes a different form, is also off the mark. At the outset, this contention is perfunctory at best; Horizon neither cites case law nor provides a developed discussion on this front. That should suffice to deem it waived. "[I]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." King v. Town of Hanover, 116 F.3d 965, 970 (1st Cir.1997) (citations and internal quotations marks omitted).

At any rate, Flores, for instance, reasonably could have thought that filing the grievance with the Union was a more cost-efficient and expedited alternative than recurring to a court of law. Moreover, that Flores elected to file a grievance procedure with the Union should be of no consequence. See Valles, 410 F.3d at 1076 ("A claim brought in state court on the basis of a state-law right that is independent of rights under the collective-bargaining agreement will not be preempted, even if a grievance arising from precisely the same set of facts could be

**CIVIL NO. 12-1191 (SEC)**  Page 11

pursued.") (citation and internal quotation marks omitted). Crucially, and as concluded above, the rights conferred by Law 379 cannot be "affected" by the parties' tacit approval. Rather, such rights may be effected only through the CBA or written agreement between the union and the employer. P.R. Laws Ann. tit. 29, § 283. Whether Flores "tacitly approved" the longstanding practice alleged by Horizon is therefore irrelevant, because such "approval" collides with Puerto Rico law.

Finally, and although surprisingly unaddressed by Horizon, deciding what is owed to Flores—an inescapable issue here—hinges neither on interpretations nor applications of the CBA. Cavallaro, 678 F.3d at 17. Here, a simple "consultation" of the CBA suffices to determine the straightforward and mechanical computation of the alleged unpaid wages. Id. 678 F.3d at 15; Lingle, 512 U.S. at 413 n. 12 ("A collective-bargaining agreement may, of course, contain information such as rate of pay . . . that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled"); but see Adames v. Exec. Airlines, 258 F.3d 7, 13 (1st Cir. 2001) (applying § 301 complete preemption after finding Puerto Rico statutory claim for meal period preempted under the Railway Labor Act because calculation of applicable rate for meal period required interpretation of agreement). In Adames the calculation of unpaid wages was compounded by the peculiarities of the airline industry—complicated calculation of pay that was the result of time changes and standby time. In this case, by contrast, there is no "[i]ndication that complex calculations are required or that industry standards are necessary to determine the meaning of CBA provisions. Padilla-Gonzalez v. Local 1575, Int'l Longshoremen's Ass'n, 635 F. Supp. 2d 105, 112 (D.P.R. 2009).

**Conclusion**

Because the meal hours regulation formed no part of the CBA at the time Flores worked for Horizon, the resolution of Flores' state-law claim "can be resolved without interpreting the

**CIVIL NO. 12-1191 (SEC)** **Page 12**

---

[CBA] itself," <u>Lingle</u> v. <u>Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 410 (1988); therefore, that claim is not substantially dependent on the CBA for § 301 preemption purposes, and, such independence defeats preemption. There being no other federal question, the Court lacks subject matter jurisdiction to entertain this action, and removal is, therefore, improper. Pursuant to 28 U.S.C. § 1447(c), this case is hereby **REMANDED** to state court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of July, 2012.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge